EXHIBIT 9

# Naugatuck Police Dept.

| INCIDENT NO | RPT TYPE | CASE STATUS | INCIDENT DATE (FROM) | TIME | INCIDENT DATE (TO) | TIME | PAGE NUMBER |
|---|---|---|---|---|---|---|---|
| 00-23239 | Initial | Settled | 09/19/00 | 16:13 | | | 1 OF 3 |

| INCIDENT LOCATION (Street No, Street, Apt) | NIBRS OFFENSE CODES ONLY | Code | FOLLOW UP BY |
|---|---|---|---|
| Fairview Ave | | | DetDiv |

**PERSON CODES:** KEY  C - COMPLAINANT  V - VICTIM  W - WITNESS  A - ARRESTEE  S - SUSPECT  O - OTHER

RACE  W: WHITE  B: BLACK  I: INDIAN  A: ASIAN  H: HISPANIC  U:UNKNOWN

DOMESTIC [ ]    WRNT APPL? [ ]

| KEY | LAST NAME | FIRST (M.I.) | STREET | CITY | ST | DOB | AGE | SEX | RACE | PHONE |
|---|---|---|---|---|---|---|---|---|---|---|
| S | Hansen | Leo | 1251 Rubber Ave Extension | Naugatuck | CT | 09/11/85 | 15 | M | W | 729-2109 |
| S | Michaels | Shane | 1 Fairview Ave | Naugatuck | CT | 07/21/84 | 16 | M | W | 729-1335 |
| O | Michaels | Linda | 1 Fairview Ave | Naugatuck | CT | 11/04/54 | 46 | F | W | 729-1335 |
| O | Hansen | Martha | 1251 Rubber Ave Extension | Naugatuck | CT | | | F | W | 729-2109 |

| KEY | LAST NAME | FIRST (M.I.) | STATUTE 1 | OFFENSE | STATUTE 2 | STATUTE 3 | STATUTE 4 |
|---|---|---|---|---|---|---|---|
| S | Hansen | Leo | | | | | |
| S | Michaels | Shane | | | | | |
| O | Michaels | Linda | | | | | |
| O | Hansen | Martha | | | | | |

### VEHICLE INFO

| STATUS | REG NO | ST | YEAR | MAKE | MODEL | BODY TYPE | COLOR | V.I.N. |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

### UCR & OTHER INFO

| NO OF VICTIMS | | | ASSAULT OF OFC | PHOTOS TAKEN | K-9 USED | DRUG VALUE | | |
|---|---|---|---|---|---|---|---|---|
| Homicide [ ] | Rape [ ] | Assault [ ] | [ ] | Y | Y | | Stolen [ ] | Rcov [ ] |

| BURGLARY | | LARCENY | LARCENY AMT | M.V. STOLEN/RECOVERED |
|---|---|---|---|---|
| Residence [ ] | Night 6pm-6am [ ] | A. Pocket-Picking | A. $200 & Over [ ] | Stolen Loc & Rcov Loc |
| Non-Resid [ ] | Day 6am-6pm [ ] | B. Purse-Snatching | B. $50-$199 [ ] | Stolen Loc & Rcov Oth Jurid |
| | Unknown [ ] | C. Shoplifting | C. Under $50 [ ] | Stolen Oth Jurid & Rcov Loc |

| ROBBERY TYPE | ROBBERY LOC | | | | |
|---|---|---|---|---|---|
| A. Firearm | A. Hwy | E. Resid | | | |
| B. Knife/Cut Instr | B. Commc House | F. Bank | | | |
| C. Oth Dang Weap | C. Serv Station | G. Misc | | | |
| D. Strong Arm | D. Conven Store | | | | |

D. Frm Motor Vehs (Except E)  E. M.V. Parts/Accessories  F. Bicycles  G. Frm Bldg (Except C, & H)  H. Frm any Coin Oper Mach  I. All Other

| AGE OF OLDEST ACCUSED INVOLVED | JUVN DISP |
|---|---|
| | 1. Handled w/l Dept & Released  2. Ref to juvn court or probation dept  3. Ref to welfare agency  4. Ref to other police agency  5. Ref to criminal or adult court |

| LATENTS FOUND | ELIMINATION PRINTS TAKEN | NEIGHBORHOOD CANV |
|---|---|---|
| [ ] | [ ] | [ ] |

| ARSON | | ARSON DAMAGE TOTAL | TYPE SENT | | | |
|---|---|---|---|---|---|---|
| Arson Prp Class [ ] | Structure Inhabited?  Y/N | | CNMSG# | NCIC# | | Date Sent |

### PROPERTY VALUES

| | MV | CURR | JWELRY | CLOTH | OFF EQ | TV-RADIO | F-ARMS | HGDS | CGDS | LIVESTK | MISC | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| STOLEN | | | | | | | | | | | | |
| RCOV | | | | | | | | | | | | |

### REMARKS

On 09/18/2000 at approximately 15:15 hours Officers Camaratta, Crosswait, O'Mara, Reilly and Bernegger of the patrol division, along with Detective Lt. Brouillette, Detective Sgt. Allen and Detectives Deeley, Blanchard and C.O.P.S. Officer S. Hunt responded to 10 Church Street, USA Vigo Store on a reported armed robbery that had just occurred. Dispatcher Nardozzi advised us that a handgun was displayed during the robbery and that one of the victims had been assaulted by one of the three suspects. See the original report for the full details, reference Case #00-23235.

During this investigation Detective Deeley utilized his K-9 Argo in an attempt to locate the suspects. According to Deeley he took Argo out of his cruiser and entered the establishment. Officer S. Hunt assisted Deeley with this track. Once inside, K-9 Argo was placed in tracking harness and given the command to track. Deeley stated Argo immediately took off tracking down a hallway and out the rear entrance of said establishment. Deeley said once in the rear of said establishment he tracked thru the back of several businesses located on Church Street. Argo tracked to a concrete wall, hurdled it and proceeded up a dirt trail, located behind Barnum Court.

| INVESTIGATOR'S SIGNATURE | ID NO | RPT DATE | SUPERVISOR'S SIGNATURE | ID NO |
|---|---|---|---|---|
| Lt. Jerry Scully | Lt2 | 09/19/00 | Capt. James Fortin | C3 |

9/20/2000    12:00:53 PM

© Copyright 1995 Hunt & Hanahan Computer Designs

## CONTINUATION REPORT

| CASE NUMBER | DATE OF REPORT | RPT TYPE | CASE STATUS | FOLLOW UP BY | |
|---|---|---|---|---|---|
| 00-23239 | 9/19/2000 | Initial | Settled | DetDiv | |

K-9 Argo tracked up the dirt trail, and onto meadow Street.

Deeley stated once on Meadow Street Argo tracked across the street, and up to a chain link fence. Argo attempted to hurdle the chain link fence. Beyond the chain linked fence, was a heavily wooded area, with a rock ledge running vertically. Deeley stated due to the rock ledge, the track was then ended.

Deeley stated Officer Hunt, himself and Argo returned to the USA Vigo Store on Church Street and got his cruiser. Deeley said they then proceeded to the area of Fairview Ave, where the suspects would have ended up had they taken the route of Argo's track and scaled the cliff.

Deeley stated while traveling Northerly on Fairview Ave., Hunt stated he believed he saw a male, later learned to be Shane Michaels, wearing a white t-shirt, lying in a prone position in the wood line. Deeley stated he stopped his cruiser and they exited it. Deeley stated once out of the cruiser he announced over the cruisers public address system for the party lying in the woods to stand up and place his hands in the air and walk out towards the sound of his voice. Deeley stated there was no response to his command. Deeley stated after one more attempt by the PA System, Hunt, himself and K-9 Argo tactically advanced towards the woods line.

Deeley stated approximately 10 yards into the wood line, Michaels jumped up, and proceeded to run towards the cliff. Deeley stated with their weapons drawn, he verbally ordered Michaels to stop running and to place his hands in the air. Deeley said Michaels did not comply with this order, but continued to run up to a hole in a chain link fence, crawl under it and continue to run. Deeley stated once Michaels got past the other fence another male appeared, wearing dark clothing, who was also running towards the cliff. This male was later identified as 15 year old Leo Hansen.

Deeley said once Hunt and him made there way thru the fence, they tactically advanced their positions towards the edge of the cliff. Deeley said approximately five feet from the cliffs edge Michaels came into view. Deeley said both officers, with weapons drawn, ordered Michaels to remove his hands from his pockets and to place them in the air. Deeley said Michaels did not comply with this order. Deeley said at this point they had a visual on Michael, but Hansen was not in their view. Deeley stated at this point, fearing for their safety, of possibly walking into an ambush, Argo was given the command to apprehend. Deeley stated they took cover behind several large trees, then tactically flanked Michaels, coming up on his right side. Deeley stated during this movement Argo and Michaels were out of sight for several seconds. Deeley said once he heard Argo engage Michaels they moved from behind there cover with their weapons drawn. Deeley stated Argo apprehended Michaels in the left buttocks area.

Deeley stated together they approached Michaels, and Argo was given the command to release. Deeley stated Argo released on command. Deeley stated Hansen was later found to be hanging off of the cliff and had to be helped up by Hunt. Deeley stated at this time Hansen told him Argo had grabbed him. Deeley stated at no point did he see Argo engage Hansen.

The victim of the armed robbery / assault was driven by Michaels and Hansen and he stated they were not the ones who had robbed him.

Deeley subsequently placed both under arrest for 53a-167a Interfering with an officer and transported to the police station.

| SUPERVISOR'S SIGNATURE | | ID NO | INVESTIGATOR'S SIGNATURE | | ID NO | PAGE NUMBER | | |
|---|---|---|---|---|---|---|---|---|
| Capt. James | Fortin | C3 | Lt. Jerry Scully | | Lt2 | 2 | OF | 3 |

© Copyright 1995 Hunt & Hanahan Computer Designs

## CONTINUATION REPORT

| CASE NUMBER | DATE OF REPORT | RPT TYPE | CASE STATUS | FOLLOW UP BY | |
|---|---|---|---|---|---|
| 00-23239 | 9/19/2000 | Initial | Settled | DetDiv | |

Upon arrival at headquarters I took photographs of both parties injuries as we awaited arrival of E.M.S. and Hansen and Michaels parents to arrive.

Hansen suffered two marks on his left hip that were either bite or claw marks from Argo. On his left buttocks area there was a mark that appeared to be a bite mark, this was partly based upon a rip in Hansens shirt that indicated Argo bit thru that into Hansen.  Hansen stated he thought it was a stray dog chasing him and that he did not hear the officers yelling.

Michaels sustained one bite mark to the left , upper, inner leg. One bite mark to the left rear calf muscle. Scrape marks to the right upper, inner leg area. Scrapes to the lower right leg and left arm that may have either been caused by Argo or from running thru the woods and/ or climbing the fence. On his right right thumb there is a small cut which I do not believe was caused by Argo. Also on his left hand their is a single puncture with no other visible injury around it or on the back side of the hand which indicates to me this injury was not caused by the dog.

No medical records have been provided by either party to this department.

I spoke with Officer Steven Hunt who confirmed Deeley's account of this incident.

| SUPERVISOR'S SIGNATURE | | ID NO | INVESTIGATOR'S SIGNATURE | | ID NO | PAGE NUMBER | |
|---|---|---|---|---|---|---|---|
| Capt.  James      Fortin | | C3 | Lt. Jerry Scully | | Lt2 | 3 | OF | 3 |

© Copyright 1995 Hunt & Hanahan Computer Designs

# NAUGATUCK POLICE DEPARTMENT
## Criminal Information Sheet

| ARRESTING OFC | | | | | |
|---|---|---|---|---|---|
| Ptl. Bart Deeley  PL28 | | | | | |

| ARREST NO | CASE/INCID NO | FILE NO | ARREST DATE | ARREST TIME | RESISTED ARR |
|---|---|---|---|---|---|
| 00-23239B | 00-23239B | | 09/18/00 | 16:00 | Y-No Inj |

| OFFENDER | | ADDRESS | | | | | |
|---|---|---|---|---|---|---|---|
| Michaels Shane | | 1  Fairview Ave.   Naugatuck CT | | | | | |

| HOW LONG | DOB | AGE | HOME PHN | WORK PHN | SEX | RACE | ETHN | HT | WT |
|---|---|---|---|---|---|---|---|---|---|
| | 07/21/84 | 16.2 | (203)729-1335 | | M | W | NH | 5-7 | 115 |

| OPER LIC NO / STATE | | MARITAL STATUS | DEPENDENTS | POB | EDUC |
|---|---|---|---|---|---|
| NONE | | Single | | Wtby | Yrs  10 |

| COURT DATE | BOND | PRIOR ARREST | | TURNED OVER TO |
|---|---|---|---|---|
| 10/04/00 | | No | | |

| LOCATION OF INCIDENT | PLACE OF ARREST | OTHER CASES PENDING |
|---|---|---|
| Woods Between Meadow St. And Fairview | Woods Between Meadow St. And Fairview | |

| PHOTO TAKEN | PRINTED | UAR NO | MISD NO | INFRAC NO | SSN |
|---|---|---|---|---|---|
| Yes | Yes | 1228376 | | | Unknown |

| CITIZEN | ALIEN REG NO | ARRESTED BEFORE - WHERE | AREA FREQUENTED |
|---|---|---|---|
| | | | |

| PHOTO NO | PRINT NO | CSBI NO | FBI NO | JUVN DISP |
|---|---|---|---|---|
| | | | | Ref to AdultCt |

| VEH INVOLVED | TYPE | REG/ STATE | MAKE / YEAR |
|---|---|---|---|
| | | | |

| MODEL | BODY STYLE | DWI TEST TYPE | TEST 1 | TEST 2 | TEMP LIC NO |
|---|---|---|---|---|---|
| | | | | | |

| EMPLOYER - SCHOOL  - OCCUPATION / ADDRESSES |
|---|
| Student |

| ALIAS | GANG | EMERG CONTACT / REFERENCES |
|---|---|---|
| | | Linda Michaels<br>same address<br>same number |

| MARKS, TATTOOS, ETC. |
|---|
| |

| FACIAL ODDITIES | FACIAL HAIR | FACIAL SHAPE | EYE CLR | EYE GLASSES | NOSE |
|---|---|---|---|---|---|
| | Clean | Oval | Grn | None | |

| TEETH | HAIR CLR | HAIR LENGTH | HAIR STYLE | BUILD | COMPLEX |
|---|---|---|---|---|---|
| Very White | Bro | Short | Straight | Thin | Light |

| SPEECH | APPEARANCE | BODILY DEFORMITIES / UNUSUAL FEATURES | HANDED | DEMEANOR |
|---|---|---|---|---|
| Normal | Casual | | Left | Calm |

| STATUTE | OFFENSE | CTS | DISPDATE | DISPOSITION |
|---|---|---|---|---|
| 53a-167a | Interfering w/Officer | 1 | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

©1998 Hanahan Computer Designs LLC

00-23239



00-23239





00-23239





00-23239





00-23239 - A





00-23239-A





1  left our department in Naugatuck, he now works in Middlebury.

2      Q      Oh, okay.

3             Does Naugatuck currently have a canine officer?

4      A      Yes.

5      Q      Who is that?

6      A      Officer Benler.

7      Q      And what's the name of Officer Benler's dog?

8      A      Ixor.

9      Q      When did Ixor come on the force?

10      A      I'm not sure.

11      Q      Are you aware of any litigation involving any

12  allegation that canine Ixor has bitten anybody?

13      A      No, I have not.

14      Q      Are you aware of any incident in which canine

15  Ixor has bitten anybody?

16      A      No, I'm not.  I don't work in the patrol

17  division no more.

18      Q      While you were a canine officer with Argo, were

19  you aware of any incident in which canine Ixor was alleged

20  to have bitten anyone?

21      A      No.

22      Q      What's the Borough of Naugatuck Police

23  Department's policy toward keeping track of the use of the

24  canine?

25      A      Well, we have a canine usage log.

EXHIBIT 3

39

1          First of all, let me ask you a different question.

2    Have you ever been involved in an incident at the Cumberland

3    Farms that's off of 8 and Route 8 in which Argo apprehended

4    somebody that's not John Lafferty?

5          A     No.

6          Q     Have you ever been involved with an incident at

7    a Cumberland Farms off of eight of Route 8 in which you

8    were involved with a motorist and officer, I think he was

9    an officer at the time, Smallitz, was also on the scene?

10              MR. TALLBERG:  I object to the form of the

11              question.

12              Can you narrow it in time, maybe?

13              MR. DOYLE:  October 12th, 1998.  Is that

14              narrow enough?

15              MR. TALLBERG:  That is helpful.  Thank you.

16              MR. DOYLE:  Okay.

17              THE WITNESS:  I was involved in an

18              incident.  I'm not sure of the date or

19              whatever, but it was at Cumberland Farms and

20              Sergeant Smallitz was there, yes.

21    BY MR. DOYLE:

22          Q     Was that involving someone other than John

23    Lafferty?

24          A     Yes.

25          Q     Was that individual bitten by Argo?

EXHIBIT 3

1    A    No.

2    Q    He was not?

3    A    No.

4    Q    Well, what do you recall about the incident

5    that you're remembering?

6    A    I'm not sure what time it was, but there was a

7    male after hours in the Cumberland Farms kept peering into

8    the windows.  I stopped, asked for identification, the

9    party first refused, started screaming, coming towards me,

10   I called my dog out of the car, put him in a down.  The

11   party then, I believe, he rendered his I.D. at that time.

12   He was put back in his car.  He left.  He came back,

13   started screaming, making accusations about the dog and I

14   requested the sergeant, duty sergeant which was Sergeant

15   Smallitz to come out on scene.

16   Q    So in your presence this individual was not

17   bitten?

18   A    No.

19   Q    Was that individual charged with any crime?

20   A    No.

21   Q    As you understand the penal code of the State

22   of Connecticut, had that individual committed probable

23   cause -- did probable cause exist for you to believe he had

24   broken any of the laws of the State of Connecticut?

25   A    No.

EXHIBIT 3

EXHIBIT 3

1    Q        And what contact did you have with the party?

2    A        The party was fleeing towards the cliff area.

3    Q        And what direction is that?

4    A        Um, heading southeast.

5    Q        What was this person wearing?

6    A        A white T-shirt, I believe, tan pants.  I'd

7    have to refer to my report, but that's what I believe it

8    was.

9    Q      .  Where was this person the first time you saw

10   him?

11   A        Running down the path.

12   Q        Did you ever see him at any time when he was

13   not running before you actually got to the part of the

14   apprehension?

15   A        No.

16   Q        So you never saw him lying in the woods, is

17   that right?

18   A        No.

19   Q        What did you do after you saw this individual

20   running?

21   A        We proceeded down the path, the party went

22   through a chain link fence.

23   Q        Well, what was the first thing you did after

24   you saw him start running?

25   A        Probably I ordered him to stop.  I'd have to

EXHIBIT 3

1    A    Yes.

2    Q    When did you become aware of him?

3    A    After we secured the first party.

4    Q    And after you secured the first party, where
5    was police dog Argo?

6    A    He was on my side.

7    Q    So was there any time after -- was there any
8    time before police dog Argo was used to apprehend the
9    person in the white shirt that he was not by your side?

10    A    Well, he was released from the time to
11    apprehend and then once he was broken, he was commanded
12    back to me.

13    Q    Okay.  And so the answer is he was always with
14    you before he was released?

15    A    Before he was released and then when he was
16    broken from given the command to apprehend, he was ordered
17    back to me.

18    Q    Okay.  How did you become aware that there was
19    a teenage boy with a black shirt on somewhere in the area?

20    A    I'm not sure if it was from him yelling or if
21    the other party told us.

22    Q    Okay.  And so before that, though, you were
23    unaware of the existence of a boy wearing a black shirt?

24    A    I believe so, yes.

25    Q    And then what happened?

EXHIBIT 3

EXHIBIT 3

1    Q    Are there any other facts, except that he was

2  in the area, that lead you to conclude that he had

3  committed a crime?

4                MR. TALLBERG:  I object to the form.

5                THE WITNESS:  No, just from our initial

6                start of the track that we were possibly

7                tracking three parties and it was my belief at

8                that time that we encountered the two parties.

9                One being the first encounter and then finding

10               the second individual.

11 BY MR. DOYLE:

12    Q    Did the second individual have any signs of

13 injury upon him when he was taken into your custody?

14                MR. TALLBERG:  I object to the form.

15                THE WITNESS:  I did not view any, no, but

16                that wouldn't be my responsibility.

17 BY MR. DOYLE:

18    Q    As the canine officer, are you supposed to take

19 notice of any injuries inflicted by the canine?

20    A    Yes.

21    Q    Did you notice that the boy in the black shirt

22 had been bitten by the dog?

23    A    No.

24    Q    Do you believe the boy in the black shirt was

25 bitten by the dog?

EXHIBIT 3

EXHIBIT 3

80

1    A        No, I don't.

2    Q        As far as you're concerned, there wasn't any

3  time in your presence that this dog was anywhere near this

4  boy, is that right?

5    A        Correct.

6            MR. TALLBERG:  I object to the form.

7            Are you talking about the boy in the black

8        shirt?

9            MR. DOYLE:  Yeah.

10 BY MR. DOYLE:

11   Q        Do you know who would have been responsible for

12 taking pictures of the boy in the black shirt after he was

13 in police custody?

14   A        The supervisor of the shift.

15   Q        Did you have any conversations with the

16 supervisor of the shift regarding this incident?

17   A        Afterwards, yes.

18   Q        Is that Lieutenant Skulley?

19   A        Yes.

20   Q        Did he ask you about injuries that the boy in

21 the black shirt was exhibiting?

22   A        When all the photographs were taken, I wasn't

23 present, so I never viewed the individual.

24   Q        Okay.  Did there come a time, though, when

25 Lieutenant Skulley conducted the investigation that you say

EXHIBIT 3

EXHIBIT 3

1    always gets done after the use of force?

2        A       Yes.

3        Q       As you recall, Lieutenant Skulley conducting

4    that investigation, did it involve asking you questions

5    about what happened?

6        A       Yes, it did.

7        Q       When Lieutenant Skulley asked you about your

8    version of what happened, did he tell you that the boy in

9    the black shirt had dog bites?

10       A       He told me that he had marks on him, yes.

11       Q       What was your explanation for that?

12       A       For the marks?

13       Q       What did you say to him when Lieutenant Skulley

14   said to you that the boy in the black shirt had marks?

15       A       That my dog did not engage him.  My dog engaged

16   the other party.

17       Q       Did you tell him anything else about the boy in

18   the black shirt?

19       A       I mean, he asked me about the whole incident,

20   my version of the whole incident.

21       Q       Yes.  And did you tell him anything else other

22   than with regard to the boy in the black shirt, other than

23   that your dog had nothing to do with the boy in the black

24   shirt?

25       A       No.  I just explained to him that they both ran

EXHIBIT 3

EXHIBIT 4

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LINDA MICHAELS, AS PARENT AND
NEXT FRIEND OF SHANE MICHAELS,
SHANE MICHAELS                          :        CIVIL ACTION NO. **3:02CV1446 (JBA)**

                        Plaintiff

vs.                                     :

THE BOROUGH OF NAUGATUCK,
PATROLMAN BART DEELEY,
OFFICER HUNT                            :        OCTOBER 6, 2003

                        Defendant

### AFFIDAVIT OF LINDA MICHAELS

I, Linda Michaels, being duly sworn, hereby declare and say:

1.      I am over the age of eighteen (18) years and know and understand the obligation

of an oath.

2.      On November 1, 2000, I delivered a signed, notarized complaint to the police

department of the Borough of Naugatuck, seeking an investigation into the actions of Bart

Deeley, the police dog, and Officer Hunt.  ( Ex. A attached )

3.      After delivery of this complaint, I was not contacted by any member of the

police department of the Borough of Naugatuck to discuss, investigate or communicate in any

way about my complaint.

Linda Michaels

Subscribed and sworn to before me this 6th day of October, 2003.

_Lorraine Fitzgerald_

Commissioner of the Superior Court
Notary Public
My commission expires:

LORRAINE FITZGERALD,
NOTARY PUBLIC, STATE OF CT
NO. 87970
NEW HAVEN COUNTY
EXPIRES NOV. 30, 2003

November 1, 2000

Mr. Dennis Clisham
Chief of Police
Naugatuck Police Department
211 Spring Street
Naugatuck, CT 06770

RE:    Shane Michaels

Dear Chief Clisham:

By this letter, I request that an internal investigation be made about an incident that involved my son, and two of your police officers plus the police dog that occurred on September 18, 2000. I'm including a copy of the police report so you'll know which incident.

My son and a friend of his were walking through the woods off of Fairview Avenue when they were attacked by what turned out to be your department's police dog. At this time, the dog was not being handled in any way by any police officer, but was simply running along the path that goes through the woods off of Fairview Avenue. Both my son and his friend were bitten several times during this incident.

After your officers stopped the dog from attacking these boys, they actually arrested them and charged them with interfering with an officer. The police report that is filed was completely made up by your officer. He claims, amongst other things, that Shane was hiding in the woods, jumped up and ran from the police when they told him to stop, wouldn't show his hands, ran through a hole in the fence and off along the edge of some cliff, and was only attacked by the police dog because the officers commanded the dog to attack him because he would not show his hands. Also, all this took place while my son was supposedly wearing a white shirt. None of this happened, including the identification of my son as wearing a white shirt. As you will see when you check your department's own mug shots, he was wearing a black shirt. Also, I live on Fairview Avenue, and I was home at the time. Your officers did not drive down Fairview Avenue using the P.A. system on their car as is claimed on the police report, or I or any number of my neighbors would have heard it.

Now, my son is facing criminal charges which the Waterbury prosecutor will not drop because of the false statements made in your officer's report. I want an investigation not only into the circumstances under which this police dog was allowed to roam through a heavily traveled public area in this borough, but also into the false report filed by your officer.

# AFFIDAVIT

The undersigned, Shane Michaels, being duly sworn deposes and says:

1.    That I am over the age of sixteen;

2.    That I understand the obligation of an oath;

3.    On September 18, 2000, I was walking along the path next to Fairview Avenue on the way to Hillside School;

4.    At this time, I was wearing a black shirt;

5.    As I was walking along this path with my friend, a dog who was not wearing any distinctive markings trotted up to us;

6.    We could not tell that this dog was anything other than a stray dog;

7.    The dog began to sniff my friend's hand and came around my friend and began biting my leg. He bit me seven or eight times while I tried to get away from him and I moved a number of feet away from where he first started to bite me and shimmied up a tree out of his reach;

8.    When I was out of his reach, he turned and bit my friend; after he bit my friend, two police officers came down the path, they took control of the dog, and then took my friend and me into custody;

9.    We went directly from the area of the attack up the side of a hill to a police car on Fairview Avenue;

10.    At no time did I run from any police officers because I was already up a tree before I saw any police officers;

11.    At no time did I run through a hole in a chain link fence; from the time that I was first bitten by the dog until the time I was taken into custody by the police, I traveled no more than twenty feet from the point of the attack to the tree;

12.    I have read the police report in which the officer says that he saw me lying down in the woods. This also never happened, as I was just walking down the path before the dog came along and began biting me. Also, where I was walking on that path was maybe twenty yards from the street. At no time did I hear any police officers making any announcement over the cruiser P.A. system, and no one in my neighborhood that I have talked to said that they heard any police officers make any announcement over the cruiser P.A. system on September 18, 2000.

_____
SHANE MICHAELS

Subscribed and sworn to before me this_____ day of November, 2000.

_____
NOTARY PUBLIC
My Commission Expires:

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LINDA MICHAELS, as PARENT and<br>NEXT FRIEND of SHANE MICHAELS,<br>SHANE MICHAELS,<br>         Plaintiffs<br><br>   vs.<br>THE BOROUGH of NAUGATUCK,<br>PATROLMAN BART DEELEY,<br>OFFICER HUNT,<br>         Defendants | :  CIVIL ACTION NO.  3:02CV1446 (JBA)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:  JUNE 5, 2003<br>: |

**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S**
**FIRST SET OF INTERROGATORIES**
**AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure the defendants hereby object to plaintiff's May 9, 2003 Interrogatories as follows:

**INTERROGATORIES**

1.    Please state the full name and title of all individuals who will provide answers to these Interrogatories.

    **ANSWER**:

               DEBUTY CHIEF OF POLICE
               THOMAS HUNT

2.    State the number of times that Naugatuck Police Department K-9 Argo was involved in an incident in which Argo bit anyone from January 1, 1998 to the present.

               TWENTY - SIX   (26)

324993

**OBJECTION**: The defendants object to this Interrogatory on the grounds that the information sought is overly broad and burdensome, ambiguous and vague. Furthermore, the information sought is not reasonably calculated to lead to the discovery of admissible evidence.

3.    State the number of times that an individual made a claim for personal injuries arising out of dog bites inflicted by Argo from January 1, 1998 to the present.

**OBJECTION**: The defendants object to this Interrogatory on the grounds that the information sought is overly broad and burdensome, ambiguous and vague. Furthermore, the information sought is not reasonably calculated to lead to the discovery of admissible evidence.

4.    State the number of complaints made to the police department by any individual seeking an internal investigation into the activities of Patrolman Bart Deeley from January 1, 1998 to the present, and indicate for each complaint whether the citizen's complaint included a complaint about the activities of Argo.

**ANSWER:**

NONE

5.    State the number of internal investigations that have been begun concerning the activities of Patrolman Bart Deeley and K-9 Argo from January 1, 1998 to the present.

**ANSWER:**

NONE

6.      Was an internal investigation conducted for the incident that forms the gravamen of this Complaint?

**ANSWER**:

YES AN INVESTIGATION WAS CONDUCTED BY THE SHIFT SUPERVISOR

7.      If not, list every reason why an internal investigation was not conducted into the incident that forms the gravamen of this Complaint.

**ANSWER**:

8.      If an internal investigation was begun, to whom was the investigation assigned?

**ANSWER**:

LT. JERRY SCULLY

9.      If an internal investigation was conducted, what was the conclusion of the investigating officer, and what were the facts upon which the investigating officer relied in reaching his conclusion?

**ANSWER**:

INVESTIGATOR INTERVIEWED BOTH POLICE OFFICERS INVOLVED.

10.     State the number of times Patrolman Bart Deeley has been subjected to internal departmental discipline from the date of his hire to the present.

**ANSWER:**

NONE

11.     State the number of times Officer Hunt has been subjected to internal departmental discipline from the date of his hire to the present.

**ANSWER:**

NONE

12.     Identify all civil actions in which the Borough of Naugatuck, the Naugatuck Police Department, or any member of the Naugatuck Police Department have been defendants involving claims alleging police misconduct or violations of civil rights in the past eight (8) years, and for each such action, list the name of the case, the docket number and court location, whether the case is still pending, and, if not, the disposition for each case; and, for each action, include the amount of any verdict or settlement, and the name and address of the plaintiff's attorney.

**OBJECTION**: The defendants object to this interrogatory on the grounds that the information sought is overly broad, burdensome, and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. In addition, to the extent that any such civil actions exist they are

available to the public and the requested information can be obtained by plaintiff's counsel to the same extent as by defendants' counsel.

13.    Identify all claims brought against the Borough of Naugatuck, the Naugatuck Police Department, or any member of the Naugatuck Police Department since January 1, 1995 for which a settlement was reached prior to the institution of suit.

**OBJECTION**: The defendants object to this interrogatory on the grounds that the information sought is overly broad, burdensome, and ambiguous and are not reasonably calculated to lead to the discovery of admissible evidence. In addition, the requested information may be protected by the attorney client privilege, the work product doctrine, and may be protected from disclosure by confidentiality agreements.

DEFENDANTS,
BOROUGH OF NAUGATUCK, BART DEELEY
AND STEVEN HUNT

By_____
    JAMES N. TALLBERG, ESQ.
    Federal Bar No. ct17489
    Updike, Kelly & Spellacy, P.C.
    One State Street, P.O. Box 231277
    Hartford, CT 06123-1277
    Tel. No. (860) 548-2600
    Fax No. (860) 548-2680