EXHIBIT 6

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LINDA MICHAELS, AS PARENT AND
NEXT FRIEND OF SHANE MICHAELS,
SHANE MICHAELS                              :        CIVIL ACTION NO. **3:02CV1446 (JBA)**
               Plaintiff

vs.                                         :

THE BOROUGH OF NAUGATUCK,
PATROLMAN BART DEELEY,
OFFICER HUNT                                :        OCTOBER _6_ , 2003
             Defendant

### AFFIDAVIT OF KEVIN BOWLER

    I, Kevin Bowler, being duly sworn, hereby declare and say:

    1.    I am over the age of eighteen (18) years and know and understand the obligation of an oath.

    2.    On October 12, 1998, Naugatuck police dog Argo attacked me, inflicting wounds that required medical attention at the Norwalk Hospital. (see record attached as Ex. A)

    3.    Argo attacked me without being ordered to do so by its handler, whom I later learned was Patrolman Bart Deeley.

    4.    Argo attacked me even though I was not engaged in a physical confrontation with its handler.

    5.    Argo attacked me even though Deeley issued repeated commands to stop.

6.     At the time of the attack, I was not engaged in the commission of a crime, I was not charged with committing a crime, and I was not arrested.

7.     Sergeant Rick Smolicz arrived on the scene after the attack by the police dog, and saw the physical evidence that the police dog had bitten me.

8.     I had two conversations with Police Chief Clisham to complain about this attack, in which I described the incident fully, and identified Bart Deeley by name.

9.     I concluded my conversation with the Police Chief, having been led to believe by the Chief that something was going to be done about this attack.

_____
Kevin Bowler


Subscribed and sworn to before me this 6th day of October, 2003.


_____
Commissioner of the Superior Court
~~Notary Public~~
~~My commission expires:~~

EXHIBIT 6A

**Norwalk Hospital**
Norwalk, Connecticut 06856

MEDICAL RECORD COPY

# AMBULATORY REGISTRATION

17-674 (1/91)

**PATIENT INFORMATION**

ROOM #: 3

Bowler Kevin
75 Sylvan Rd. No.
Westport, Ct

| FINANCIAL NO | SEX | AGE | DOB | RACE | ACC TYPE | UNIT NO |
|---|---|---|---|---|---|---|
| 5717 | M | 37 | 7/12/61 | C | ES | 182 050 |

HOME PHONE: 760-2626
MODE OF ARRIVAL: Car
REG DATE AND TIME: 10/12/98 2:45

EMERGENCY CONTACT: Bowler, Roger
RELATION: Fat
HOME PHONE: 227-3754
ACCIDENT: S
INJURY DATE:
EMP COMP F/C: S 1

FILE BY: 7431
TREATMENT PREFER: ESMD
PATIENTS PHYSICIAN ADDRESS: Dr. M. Skluki
PATIENTS EMPLOYER/ADDRESS: Space Age Printing & Graphi[cs] 8 Tindall Ave
INSURANCE CO NO / ID NUMBER / INSURANCE CO NO / ID NUMBER

**TRIAGE NOTES**

CHIEF COMPLAINT: 0242 Pt was grabbed by a dog on (R) thigh approx. 1hr PTA by Blue Dog. Pt states sl. abrasions to (R) leg. ⊖ other complaints

| TIME | B.P. | PULSE | RESP. | TEMP |
|---|---|---|---|---|
| 0245 | UA/ko | 72 | 14 | 97 T |

Last TD 10 yrs
ECTV

PMH ⊖
MEDICATIONS ⊖
ALLERGIES NKAD.
SIGNATURE AND TITLE: [illegible] RN BSN

**ORDERS — PLEASE CIRCLE**

| MED C | HOLD | BLOOD CULTURE 1 2 3 ARD | | MODE TRANS. | | PORTABLE | |
|---|---|---|---|---|---|---|---|
| ARREST | | W WC S | | | | PELVIS | |
| MONITOR | | H/H | CBC | PREG? Y N | R | HIP | L |
| ECG 1 2 3 | | TYPE + SCREEN / X MATCH | # UNITS | SKULL | ORBIT R | TIB-FIB | L |
| ABG 1 2 3 | | CHEM 8 | MED SCRN | FACIAL | NASAL R | KNEE | L |
| | | | | C-SPINE PRECAUTIONS | R | ANKLE | L |
| O2 % | | CARDIAC ENZYM | GLUC. | C SPINE | D R | FOOT | L |
| O. WALKER | | AMY | LIPASE | L SPINE | S A | CHEST | |
| GLUCOSCAN | | [illegible] | ALICY LATES | R CLAVICAL | L U | ABD | F |
| U PREG | | DILANT. | BARB. | R RIBS | L | OBSTR. | |
| A URINE C/S | | DIG. | THEOPH. | R SHOULDER | L | IVP | |
| CULTURES | | ETOH | PT PTT | R ELBOW | L | CAT SCAN | |
| RAPID STREP | | DRUG SCREEN | URINE BLOOD GASTRIC | R WRIST | L | ULTRASOUND | |
| WOUND | | | | R CARPAL NAVIC | L | | |
| ABSCESS | | NEB 1 2 3 | | R HAND | L | PANOREX | |
| | | PK FLO 1 2 3 | | R FOREARM | L | MANDIBLE | |

| TIME OF ORDER | & SUPPLIES | TETANUS WITHIN: UNK ☐ 5 YEARS ☐ > 10 YRS ☐ | TIME | NURSE SIGNATURE |
|---|---|---|---|---|
| | Td 0.5 cc | | 0302 | [signature] |
| | Clean Rt thigh | | | |

TIME SEEN BY M.D. 2:50 | M.D. INIT. [illegible]

**PHYSICIANS DIAGNOSIS & TREATMENT — STAFF PHYSICIAN / ATTENDING NOTES**

Dog bite Rt thigh
2 small erythem. Streaks – parallel
Rt ant thigh
1 1/2" – 1"
⊖ PW

924.10
E906.0

Dog Bite
[signature]

DISCHARGE TIME: 0305

CONDITION ON DISCHARGE: Stable | CARE: MD [illegible] | FACILITY | ☒ DISCHARGED ☐ ADMITTED

**PATIENT INSTRUCTIONS AND DISPOSITION**

☐ NASAL PACK ☐ CHEST/RIBS ☐ HEAD INJURY ☐ SPRAIN ☐ BACK ☐ EYE ☐ LACERATION ☐ P.W. ☐ LOCAL MD ☐ BURN ☐ GASTRO INTESTINAL ☐ COLD

TIME EMERGENCY CONTACT NOTIFIED
ROOM ASSIGNMENT AND TIME
TIME FLOOR REPORT GIVEN
WITNESS

I HAVE RECEIVED THESE WRITTEN INSTRUCTIONS AND UNDERSTAND THEM: PATIENTS SIGNATURE

EXHIBIT 7

## Naugatuck Police Dept. K-9 Usage

| | Incident No. | Incident Date | Suspect's Name | Suspect Injured | Med. Treat. | Ofc. I.D. | Officer Injured | K-9 | K-9 Usage | Bite |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 98-18722 | 07/31/98 | Ernesto Rodriguez | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 2. | 98-20909 | 08/23/98 | Eileen Garrett | No | No | PL20 | No | Argo | Track | No |
| 3. | 98-21007 | 08/24/98 | Heidi Butrej | No | No | PL20 | No | Argo | Search | No |
| 4. | 98-22039 | 09/04/98 | Martin Utitus | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 5. | 98-24030 | 09/25/98 | Unknown | No | Yes | PL20 | No | Argo | Apprehend | Yes |
| 6. | 98-24313 | 09/28/98 | Unknown | No | No | PL20 | No | Argo | Search | No |
| 7. | 98-25612 | 10/14/98 | Robert Jackson | Yes | No | PL20 | No | Argo | Track | No |
| 8. | 98-27164 | 10/31/98 | Steven Saunders | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 9. | 98-24745 | 10/03/98 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 10. | 99-795 | 01/09/99 | Stephen Mercado | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 11. | 99-2128 | 01/25/99 | William Torres | Yes | No | PL20 | Yes | Argo | Apprehend | Yes |
| 12. | 99-7050 | 03/20/99 | William Herens | No | No | PL20 | No | Argo | Apprehend | Yes |
| 13. | 99-15888 | 06/22/99 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 14. | 99-19912 | 08/03/99 | Earl Brown | Yes | Yes | PL20 | No | Argo | Track | Yes |
| 15. | 99-21838 | 08/22/99 | Jarrod Wilkes | Yes | Yes | PL20 | No | Argo | Search | No |
| 16. | 00-2526 | 01/31/00 | Robert Miller | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |

PLAINTIFF'S EXHIBIT
7/11/03
NO. 2 7bc

June 23, 2003

| Incident No. | Incident Date | Suspect's Name | Suspect Injured | Med. Treat. | Ofc. I.D. | Officer Injured | K-9 | K-9 Usage | Bite |
|---|---|---|---|---|---|---|---|---|---|
| 17. 00-12137 | 05/22/00 | John Bookless | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |
| 18. 00-20714 | 08/24/00 | Unknown | No | No | PI20 | No | Argo | Track | No |
| 19. 00-20831 | 08/24/00 | Unknown | No | No | PI20 | No | Argo | Track | No |
| 20. 00-23239 | 09/18/00 | Unknown | Yes | No | PL20 | No | Argo | Search | Yes |
| 21. 00-20643 | 08/23/00 | Thomas Harrison | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |
| 22. 00-20809 | 08/24/00 | Leonard Ortiz | No | Yes | PL20 | No | Argo | Track | No |
| 23. 00-21113 | 08/28/00 | Conrad Carvey | No | No | PL20 | No | Argo | Search | No |
| 24. 00-31900 | 12/13/00 | Unknown | No | No | PI20 | No | Argo | Track | No |
| 25. 01-12532 | 05/14/01 | Douglas Perzanowski | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 26. 98-29881 | 11/27/98 | Kevin Manoni | Yes | Yes | PL20 | No | Argo | Track | Yes |
| 27. 99-2108 | 01/25/99 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 28. 99-8318 | 04/02/99 | David Harris | No | No | PL20 | No | Argo | Track | No |
| 29. 99-8492 | 04/03/99 | Thomas McGovern | Yes | Yes | PL20 | Yes | Argo | Search | Yes |
| 30. 99-14081 | 05/31/99 | Robert Snyder | Yes | Yes | PL20 | Yes | Argo | Apprehend | Yes |
| 31. 99-25040 | 09/23/99 | David Kronhout | Yes | Yes | PL20 | Yes | Argo | Apprehend | Yes |
| 32. 01-21964 | 08/17/01 | Pedro Rodriquez | No | Yes | PL20 | Yes | Argo | Track | Yes |
| 33. 01-15348 | 06/10/01 | Ramon Rosado | Yes | Yes | PL20 | No | Argo | Apprehend | No |
| 34. 00-31183 | 12/08/00 | Missing child | No | No | PL20 | No | Argo | Search | No |
| 35. 01-6434 | 03/13/01 | Missing elderly female | No | No | PL20 | No | Argo | Search | No |
| 36. 02-9070 | 04/03/02 | Daniel Hall | Yes | Yes | PI19 | Yes | Argo | Search | Yes |
| 37. 01-19070 | 07/19/01 | Samuel Rivera | No | No | PI19 | No | Argo | Assist | No |
| 38. 01-27504 | 10/15/01 | Unknown | No | No | PI19 | No | Argo | Alarm | No |
| 39. 01-15348 | 06/13/01 | Ramon Rosado | Yes | Yes | PI19 | No | Argo | Apprehend | No |

Pg. 2

12:45 PM

EXHIBIT 8



## Naugatuck Police Dept.
### K-9 Usage

| | Incident No. | Incident Date | Suspect's Name | Suspect Injured | Med. Treat. | Ofc. I.D. | Officer Injured | K-9 | K-9 Usage | Bite |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 98-18722 | 07/31/98 | Ernesto Rodriguez | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 2. | 98-20909 | 08/23/98 | Eileen Garrett | No | No | PL20 | No | Argo | Track | No |
| 3. | 98-21007 | 08/24/98 | Heidi Butrej | No | No | PL20 | No | Argo | Search | No |
| 4. | 98-22039 | 09/04/98 | Martin Ukitus | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |
| 5. | 98-24030 | 09/25/98 | Unknown | No | No | PL20 | No | Argo | Search | No |
| 6. | 98-24313 | 09/28/98 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 7. | 98-24745 | 10/03/98 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 8. | 98-25612 | 10/14/98 | Robert Jackson | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 9. | 98-27164 | 10/31/98 | Steven Saunders | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 10. | 98-29881 | 11/27/98 | Kevin Manoni | Yes | Yes | PL20 | No | Argo | Track | Yes |
| 11. | 99-795 | 01/09/99 | Stephen Mercado | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 12. | 99-2128 | 01/25/99 | William Torres | Yes | Yes | PL20 | Yes | Argo | Apprehend | Yes |
| 13. | 99-2108 | 01/25/99 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 14. | 99-7050 | 03/20/99 | William Herens | Yes | No | PL20 | No | Argo | Apprehend | Yes |
| 15. | 99-8318 | 04/02/99 | David Harris | No | No | PL20 | No | Argo | Track | No |
| 16. | 99-8492 | 04/03/99 | Thomas McGovern | Yes | Yes | PL20 | Yes | Argo | Search | Yes |

| Incident No. | Incident Date | Suspect's Name | Suspect Injured | Med. Treat. | Ofc. I.D. | Officer Injured | K-9 | K-9 Usage | Bite |
|---|---|---|---|---|---|---|---|---|---|
| 17. 99-14081 | 05/31/99 | Robert Snyder | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |
| 18. 99-15888 | 06/22/99 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 19. 99-19912 | 08/03/99 | Earl Brown | Yes | Yes | PL20 | No | Argo | Track | Yes |
| 20. 99-21838 | 08/22/99 | Jarrod Wilkes | Yes | Yes | PL20 | No | Argo | Search | No |
| 21. 99-25040 | 09/23/99 | David Kromhout | Yes | Yes | PL20 | Yes | Argo | Apprehend | Yes |
| 22. 00-2526 | 01/31/00 | Robert Miller | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |
| 23. 00-12137 | 05/22/00 | John Bookless | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |
| 24. 00-20643 | 08/23/00 | Thomas Harrison | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |
| 25. 00-20714 | 08/24/00 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 26. 00-20831 | 08/24/00 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 27. 00-20809 | 08/24/00 | Leonard Ortiz | No | No | PL20 | No | Argo | Track | No |
| 28. 00-21113 | 08/28/00 | Conrad Carvey | No | No | PL20 | No | Argo | Search | No |
| 29. 00-23239 | 09/18/00 | Unknown | Yes | Yes | PL20 | No | Argo | Search | Yes |
| 30. 00-31183 | 12/08/00 | Missing child | No | No | PL20 | No | Argo | Search | No |
| 31. 00-31900 | 12/13/00 | Unknown | No | No | PL20 | No | Argo | Track | No |
| 32. 01-32 | 01/01/01 | Unknown | No | No | PL18 | No | Ixor | Track | No |
| 33. 01-447 | 01/05/01 | John Defeo | No | No | PL20 | No | Argo | Apprehend | Yes |
| 34. 01-5379 | 03/03/01 | Shane Robertson | No | No | PL18 | No | Ixor | Track | No |
| 35. 01-5434 | 03/13/01 | Missing elderly female | No | No | PL20 | No | Argo | Search | No |
| 36. 01-6852 | 03/18/01 | Unknown | No | No | PL18 | No | Ixor | Search | No |
| 37. 01-9209 | 04/12/01 | Unknown | No | No | PL18 | No | Ixor | Search | No |
| 38. 01-98526 | 05/08/01 | Mary Jones | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |
| 39. 01-12532 | 05/14/01 | Douglas Perzanowski | Yes | Yes | PL20 | No | Argo | Apprehend | Yes |

...er 5, 2001

Pa. 2

2:11 PM

ber 5, 2001

| Incident No. | Incident Date | Suspect's Name | Suspect Injured | Med. Treat. | Ofc. I.D. | Officer Injured | K-9 | K-9 Usage | Bite |
|---|---|---|---|---|---|---|---|---|---|
| 40. 01-13336 | 05/21/01 | Unknown | No | No | PL20 | No | Ixor | Track | No |
| 41. 01-13600 | 05/24/01 | Unknown | No | No | PL20 | No | Ixor | Search | No |
| 42. 01-15348 | 06/10/01 | Ramon Rosado | Yes | Yes | PL20 | No | Argo | Apprehend | No |
| 43. 01-21964 | 08/17/01 | Pedro Rodriquez | No | No | PL20 | Yes | Argo | Track | Yes |

Pa. 3

EXHIBIT 9

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LINDA MICHAELS, AS PARENT AND
NEXT FRIEND OF SHANE MICHAELS,
SHANE MICHAELS                    :        CIVIL ACTION NO. **3:02CV1446 (JBA)**
                    Plaintiff

vs.                               :

THE BOROUGH OF NAUGATUCK,
PATROLMAN BART DEELEY,
OFFICER HUNT                      :        OCTOBER 6, 2003
                    Defendant

## AFFIDAVIT OF JOHN LAVERTY

I, John Laverty, being duly sworn, hereby declare and say:

1.    I am over the age of eighteen (18) years and know and understand the obligation of an oath.

2.    I was attacked by police dog Argo on September 29, 1999.

3.    At the time I was attacked by police dog Argo, I was not engaged in a physical confrontation with its handler.

4.    At the time that police dog Argo attacked me, he had not been ordered to do so by his handler.

5.    To attack me, Argo leaped from the inside of the police cruiser through the window and crossed a parking lot before his handler saw him and ordered him to stand down.

6.    I filed a lawsuit against the Borough of Naugatuck and Bart Deeley for this incident.

_____
John Laverty

Subscribed and sworn to before me this 6th day of October, 2003.

_____
Commissioner of the Superior Court
Notary Public
My commission expires:

<u>EXHIBIT 10</u>

PLAINTIFF'S
EXHIBIT
7/11/03
3 for
NO.

# NAUGATUCK POLICE DEPARTMENT

Title:        **CANINE UNIT**

Procedure:    **4.6.**

Date Issued:  **3-1-2002**

Revised:

## I.    PURPOSE:

It is the purpose of this policy to provide guidelines for the management of the Naugatuck Police Department's canine unit, use of police canines in field operations and police vehicles used by canine officers..

## II.   POLICY:

Because of a superior sense of smell and hearing and potential aggressiveness, the trained law enforcement canine is a valuable supplement to the police work force. However, utilization of canines requires adherence to procedures that properly control their use of force potential and that channel their specialized capabilities into legally acceptable crime prevention and control activities.

## III.  DEFINITION:

Canine Team:  An officer handler and his assigned police canine.

## IV.   PROCEDURES:

## CANINE UNIT UTILIZATION

4.6.1. Canine teams are available on a 24-hour, on-call basis to conduct

      A. building searches for offenders in hiding;
      B. assist in the arrest or prevent escape of serious or violent offenders;
      C. protect officers or others from death or serious injury;
      D. track suspects,
      E. or locate lost or missing persons,
          1. hidden instrumentality's or
          2. evidence of a crime;
      F. detect the presence of concealed narcotics.
      G. Handler protection, assisting and protecting their handler
      H. Crowd control, assisting in dispersing crowd situations
      I. Deterrent, back-up in potentially dangerous situation
      J. Demonstration, public relations, informational lectures and
      demonstrations.

4.6.2. Canine teams should not be used to respond to minor complaints but may engage in assignments not listed here with the approval of the Shift commander.

4.6.3. Canine handlers are responsible for determining whether a situation justifies canine use and the appropriate tactical measures that should be taken. Police canines may not be handled or given commands by anyone other than the assigned handler.

4.6.4. Officers shall request canine team assistance from the Shift Commander through the communications center. Communications center personnel shall forward requisite information concerning the incident to the canine handler.

## UNIT QUALIFICATIONS AND TRAINING

4.6.5. Applicants for the police canine unit must have:

A. At least three (3) years of uniform patrol experience with satisfactory work performance, disciplinary and medical/sick leave records;
B. A willingness to remain with the unit for at least seven years;
C. A willingness (together with other family members) to care for and house the canine at the officer's residence with a secure outdoor area for the canine;
D. A strong desire to work with canines and willingness to care for and train the animal; and
E. The ability to pass designated physical fitness and agility tests related to the tasks of canine handling.

4.6.6. The Chief of Police shall be responsible for selection of canine handlers.

4.6.7. Canine selection;

A. the dogs will be male German Shepherds, sound bodies, physically fit and of good even temperament.
B. they will not be younger than eighteen (18) months nor older than three and one half (3 1/2) years to start training.
C. Dogs will be owned by the Borough of Naugatuck but will be turned over to their handler at the time of the dog's retirement, or when the dog is mentally or physically unfit for duty.

4.6.8. All departmental canines must meet certification requirements. Untrained canines may not be used for canine duty.

4.6.9. New canine handlers and canines must complete and be certified by a recognized canine training academy.

A. After certification the canine team must obtain in-service training one (1) day per month and one (1) week per year to maintain certification at the recognized canine training academy.

4.6.10. Canine handlers are required to demonstrate acquired abilities to the Chief of Police or his designee on a periodic basis.

## USE OF CANINE TEAMS AND HANDLER'S RESPONSIBILITIES

4.6.11. The primary duty of the canine team will be to function as a patrol unit and carry out patrol functions. Patrol canines have a massive deterrent value that cannot

be readily measured. It is an established fact that the mere presence of a trained canine team will deter most subjects from committing a crime.

4.6.12. Each canine officer shall have their canine with them at all times while on duty, except;

     A. Private duty jobs
     B. Court appearances
     C. Patrol officers in-service training for police certification.
     D. canine is incapacitated

4.6.13. While investigating complaints not requiring the use of a Canine Unit, the handler will leave the canine properly secured in the canine patrol vehicle.

4.6.14. An on duty canine team should be dispatched to a potential canine use situation by the shift supervisor. Canine deployment is the responsibility of the canine handler. A canine handler best knows the capabilities and limitations of their dogs and is trained in tactical canine deployment situations. Shift supervisors should consider any advice relating to the deployment of a canine offered by the handler.

4.6.15. An off duty canine team should be dispatched to a potential canine use situation as soon as possible. The authorization for calling an off duty canine team will come from the Shift Commander or supervisor if the Commander is not available. Once the canine team is contacted they will be considered on duty.

4.6.16. All mutual aid request for a Naugatuck Police Department canine team will require authorization from the Deputy Chief of Police.

## CANINE BITES AND INJURIES

4.6.17. Use of specially trained police canines for law enforcement responsibilities constitutes a real or implied use of force. In this, as in other cases, officers may only use that degree of force that reasonably appears necessary to apprehend or secure a suspect as governed by the department's use of force policy. In all instances where a canine is deployed in a tactical situation, a written report shall be submitted to the Shift Commander. Whenever a canine bites an individual, whether or not in the line-of-duty, the handler shall:

     A. Notify the Shift Commander;
     B. Obtain medical treatment for the person;
     C. Take color photographs of the affected area if possible prior to and following medical treatment; and
     D. Submit a written report whenever it has been alleged that a canine has bitten or otherwise injured an individual. The report must detail the circumstances surrounding the incident, the identity of the individual involved and any witnesses, the extent of the injuries if known, and measures taken in response to the incident. The report shall be filed according to the department's use of force policy.

4.6.18. When a person has been bitten by a police dog, the police dog may continue to perform its duties for the police department and any period of observation of the police dog may be under the supervision of the canine handler. The supervision shall consist of the dog being locked in a kennel,

performing its official duties in a police vehicle or remaining under the constant supervision of its police handler.

    A. Pursuant to Connecticut General Statutes Section 22-358, a police canine is exempt from the quarantine provision of this section when the police canine is under the direct supervision, care and control of his assigned handler, provided the canine has been vaccinated annually and is subject to routine veterinary care.

## CANINE USE GUIDELINES

4.6.19. A primary use of departmental canines is for locating suspects in buildings or related structures where a search by officers would create an unnecessary risk. These searches shall be governed by the following:

    A. Patrol officers shall secure the building perimeter.

    B. Communications center personnel shall contact the building's owner to determine whether there may be tenants or others in the building and to ascertain the building's layout.

    C. When a canine building search is anticipated, a preliminary search by officers should not be conducted as this will interfere with the canine's ability to discriminate scents.

    D. The on-scene supervisor shall also take the following steps in preparation for the canine search:

    E. Evacuate all tenants, workers or others from the facility.

    F. Request that all air conditioning, heating or other air-blowing systems be shut off so as not to interfere with the canine's ability to discriminate scents.

    G. The canine officer will confirm that the perimeter is secure before entering the building. Officers shall secure all exits and limit communications to those of a tactical nature.

    H. The canine may be unleashed during a building search unless there is an imminent risk of injury to innocent persons within the facility.

        1. The canine may not be used to search facilities that contain substances potentially harmful to the animal unless overriding risk to human life is present.

    I. Before starting the search, the handler or other officers shall loudly announce and repeat the statement that there are police officers on the premises and that a trained police canine will be released if the individual does not surrender. Officers shall allow a reasonable amount of time for the suspect to respond. Officers shall repeat the warning on each level of all multilevel structures.

    J. When apprehending suspects in these or related circumstances, canines shall be commanded to disengage as soon as the suspect is subdued or readily complies with officer direction.

    K. Officers may not transport arrestees in the same vehicle with a law enforcement canine unless alternative transportation is not available and immediate transport is essential for safety or security reasons.

4.6.20. Canine teams may be present where large groups of people are gathering, however, canine teams shall not be used for crowd control at peaceful demonstrations.

4.6.21. Canine teams may be used for crowd control upon approval of the Shift Commander to protect life or property during a riot or other major unauthorized

gathering that cannot be controlled by other means. In these situations, canines shall:

> A. Be short leashed at all times unless no other means are available to protect an individual from serious injury; and
> B. Not initiate any offensive action, unless to guard against imminent loss of life or serious bodily injury.

4.6.22. Use of police canines in a drug detection capacity is authorized in the following situations and under the following conditions:

> A. The canine handler shall maintain records that document the use and the proficiency of individual canines in drug detection. This documentation shall be readily available to canine officers and others who may need it when seeking warrants.
> B. Random exploratory sniffing of luggage, packages or other inanimate objects may be conducted in public facilities such as train stations, as authorized by the Chief of Police or his designee.
> C. Exploratory sniffing in these facilities shall be confined solely to those areas open to the general public and, whenever possible, with advance knowledge and consent of the appropriate facility manager.
> D. Exploratory sniffing shall be conducted without interference or annoyance to the public or interruption of facility operations.
> E. Canine sniffs conducted in areas restricted to the public, such as baggage staging areas, are considered searches and may be conducted only with reasonable suspicion or probable cause to believe that specific items contain illegal narcotics.
> F. Field officers may detain specific checked luggage or related items for purposes of requesting a canine sniff if reasonable suspicion exists but may not detain the items so long as to interfere with the owner's scheduled travel.
> G. When a drug detection canine alerts to luggage or related items, in this or other circumstances, a warrant or consent to search must be obtained before it is opened unless exigent circumstances exist to conduct an on-site search.
> H. Sniffing of an individual's person is permitted in all circumstances only when there is reasonable suspicion to believe that the individual is in possession of illegal narcotics.

4.6.23. The use of drug detection canines in public schools is permitted only when:

> A. The school's principal or designated authority requests or approves use of the canines;
> B. There is reasonable suspicion to believe that illegal narcotics are being distributed and/or consumed on the premises such that the interests of the school are being unacceptably compromised; and
> C. The search is limited to inanimate objects in public areas and the exterior of student lockers unless reasonable suspicion exists to gain admission to lockers and related areas where there is a reasonable expectation of privacy.

4.6.24. Sniffs of the exterior of homes -- either individual dwellings or the common areas of multiple unit dwellings -- may be permitted when:

> A. The officer has probable cause to be on the property.
> B. The owner has given consent.

C. A search warrant has been obtained.

4.6.25. Drug-sniffing canines may be used to sniff motor vehicles when:
A. Reasonable suspicion exists to believe the operator or passengers are in possession of illegal narcotics; or During a valid vehicle stop, the canine is used to sniff the vehicle's exterior in an exploratory manner. Unless the canine alerts to the vehicle, the operator may not be detained longer than necessary to conclude the business associated with the initial stop.

4.6.26. Police canines are available with Shift Commander approval to track missing persons or suspects, or to locate evidence that the Shift Commander has reason to believe has been abandoned or hidden in a specified open area. Such searches are subject to the following conditions and limitations:

A. When officers are pursuing suspects and contact with the suspect is lost, the officer, before summoning a canine team shall:
B. Stop and pinpoint the location where the suspect was last seen;
C. Shut off engines of vehicles in the area if possible; and
D. Avoid vehicle or foot movement in the area where the suspect or subject was last seen.
E. Canines used for tracking persons should remain on a leash of sufficient length to provide a reasonable measure of safety to the subject of the search without compromising the canine's tracking abilities.
F. Canine teams may only be used to locate small children when there is a reasonable suspicion of foul play or a belief that serious bodily harm or death will occur if the child is not located immediately. Where the use of a canine is deemed necessary, the canine officer shall explain the risks of attack to the subject to the parents or next of kin and their approval obtained to use the canine. If used to track a small child the canine will remain leashed.
   1. a thorough search of the missing person's residence shall be conducted. Said search shall be conducted by a police officer even if the family insist that they have searched the residence.
G. Canine teams may not be used to apprehend anyone suspected to be under the influence of drugs or alcohol if no other crime is involved, or the mentally disturbed if no crime is involved.
H. On-scene personnel shall: Secure the perimeter of the area to be searched;
I. Secure the integrity of the area to be searched by keeping all personnel out of the area; and
J. Protect all items of clothing that will be used for scent from being handled.

## CANINE USE AND CARE

4.6.27. Police canines shall not be used for breeding, participation in shows, field trials, exhibitions or other demonstrations, or for off-duty employment unless authorized by the Chief of Police or his designee.

4.6.28. Canines will be assigned to only one (1) handler and will live with the handler.

4.6.29. Whenever the handler is going away from home on a vacation, their canine may be kenneled at a certified kennel at the expense of the Department.

4.6.30 The canine will not be kept at the dog pound, except as may be determined by the Chief of Police.

4.6.31 In the event the canine or the handler becomes ill and the handler is unable to care for the canine, the canine may be kenneled at a certified kennel at the expense of the Department.

4.6.28. Canine handlers are personally responsible for the daily care and feeding of their animal to include:

> A. Maintenance and cleaning of the kennel and yard area where the canine is housed;
> B. Provision of food, water and general diet maintenance as prescribed by the department's authorized veterinarian;
> C. Grooming on a daily basis, or more often as required by weather, working conditions or other factors;
> D. Daily exercise (police canines are not permitted to run at large unattended); and
> E. General medical attention and maintenance of health care records.
> F. Where the handler is unable to perform these and related duties due to illness, injury or leave, the canine may be housed in a department approved kennel when the handler is unavailable.

## MEDICAL REPORTS AND RECORDS OF CANINE

4.6.29. Each department canine will be given an annual physical to include all shots and heart worm check. Pursuant to Connecticut General Statutes Section 22-358, the Police Canine will be vaccinated for rabies annually.

4.6.30. All department canines will be given heart worm medication as prescribed by the veterinarian year round.

4.6.31. Canines will only be taken to department approved veterinarians, except in an emergency.

4.6.32. Each canine handler will keep a record of any and all treatment given to his canine.

## INJURED CANINE HANDLER

4.6.33. In the event the canine handler is injured and the canine is not secured, use extreme caution in the approach of the handler.

4.6.34. The canine may take the approach of assisting personnel as a threat and defend the handler by way of an attack as he is trained to do.

4.6.35. Attempt to control the canine in this situation.

4.6.36. A passive approach to the injured handler will usually be accepted by the canine with no objection.

4.6.37. If available, a family member or other canine handler will usually be accepted by the canine with no objection.

4.6.38. If the injured handler is conscious, follow any direction or suggestions he may have to offer.

4.6.39. The canine handler's vehicle or another handler's vehicle can later be used to control the canine after the emergency is over.

4.6.40. A family member or other canine handler can later control the canine after the emergency is over

4.6.41. Officers will make every effort to control and secure the canine before using deadly force on the canine.

## RETIREMENT OF A CANINE

4.6.42. A department canine will be retired from service when it cannot mentally or physically perform to standards..

4.6.43. A retired canine will become the property of the canine handler.

4.6.44. In the event the Naugatuck Police Department canine program is discontinued, the canine will be retired.

## GENERAL RULES AND CONDUCT

4.6.45. Teasing or agitating a police canine is strictly prohibited unless performed has part of a training exercise.

4.6.46.. Handlers shall not permit anyone to pet or hug their canine without their prior permission and immediate supervision. Should a civilian express a desire to do so, he should be informed that police canines are serious working dogs and that they can be dangerous if improperly approached.

4.6.47. Personnel will not feed the canine without the permission of the canine handler.

4.6.48. Personnel will only give commands to the canine:
    A. with the permission of the handler, or
    B. during an emergency situation.

4.6.49. Personnel will not interfere with the canine team and their objective.

4.6.50. A canine handler may apply to take possession of his dog where:

    A. The canine is retired from duty or relieved due to injury; or
    B. The handler is transferred, promoted or retires and the chief of police decides not to retrain the canine for another handler.

## CANINE VEHICLES

4.6.51. A police vehicle assigned for use by the canine officer shall be used by on duty personnel only.

4.6.52. Such vehicle may remain, by order of the Chief of Police, in possession of an assigned officer at his place of residence.

4.6.53. At no time will such vehicle be used for any purpose other than police matters as set forth by law, ordinance, Police Department Policy or as directed by the proper authority.

4.6.54. Each day that any such police vehicle is used, a vehicle inspection sheet shall be completed by the canine officer and submitted to the shift supervisor at the time of such use.

4.6.55. Each officer assigned to the canine division shall immediately notify by radio the dispatcher on duty, of all changes to his/her duty status upon entering and prior to exiting his/her assigned vehicle, and shall not execute any status change without acknowledgment by the dispatcher of such change.

4.6.56. Vehicles assigned to the canine division will not be used by any officer while working Private Duty assignments, without the permission of the Chief of Police or the Deputy Chief of Police.

4.6.57. Officers assigned to the canine division, as required by all members of the Naugatuck Police Department, shall abide by all laws, rules, regulations, directives and orders governing the proper and safe operation of any Police vehicle.

4.6.58. Under no circumstances will the canine vehicles be used for the transportation or storage of any other animal, regardless if the animal is dead or alive.

4.6.59. Each canine vehicle shall be equipped as other police vehicles, in addition to special canine equipment listed below.
    A. leashes
    B. harnesses
    C. water bowl
    D. water supply

## HOURS OF WORK

4.6.60. Whatever shift the canine units are assigned they shall work only a seven (7) hour shift, the extra one (1) hour of shift time will be used either at the beginning or end of their respective shifts for grooming their canines.
    A. all canine officers will be paid for an eight (8) hour shift.

4.6.61. On the canine officers days off they will be compensated for one (1) hours pay for each day off for grooming their assigned canines.
    A. the rate of pay shall be time and one half (1 1/2) of minimum wage or whatever is stated in the Collective Bargaining Agreement between their union and the Borough of Naugatuck.

4.6.62 Under no circumstances shall the canine officer train his/her canine without the verbal or written consent of the Deputy Chief of Police.