

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

LINDA MICHAELS, AS PARENT AND
NEXT FRIEND OF SHANE MICHAELS,
SHANE MICHAELS                                  :        CIVIL ACTION NO. **3:02CV1446 (JBA)**
                        Plaintiff

        vs.                                     :

THE BOROUGH OF NAUGATUCK,
PATROLMAN BART DEELEY,
OFFICER HUNT                                    :        OCTOBER 14, 2003
                        Defendant

## LOCAL RULE 56(a)2 STATEMENT

Pursuant to Rule 56 of the Local Rules of Civil Procedure, the plaintiffs hereby offer

the following statement regarding material facts in support of their Objection to defendants'

Motion for Summary Judgment.

**I.      RESPONSE TO MOVANT'S STATEMENT OF FACTS**

        1.      Admitted.

        2.      Admitted.

        3.      Admitted.

        4.      Admitted.

        5.      Admitted.

        6.      Denied.

        7.      Denied.

8.    Admitted.

9.    Denied.

10.    Admitted.

11.    Admitted.

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Admitted.

16.    Denied.

17.    Admitted.

18.    Admitted.

19.    Denied.

20.    Denied.

21.    Denied.

22.    Admitted.

23.    Denied.

24.    Admitted.

25.    Admitted.

26.    Admitted.

27.    Admitted.

28.    Admitted.

29.    Admitted.

30.    Admitted.

31.    Admitted.

32.    Admitted.

33.    Admitted.

34.    Denied.

35.    Denied.

36.    Admitted.

37.    Admitted.

38.    Denied.

39.    Admitted.

40.    Denied.

## II.    DISPUTED ISSUES OF MATERIAL FACT

1.    On or about September 18, 2000, Shane Michaels ("Michaels"), then a minor child, was walking along a path parallel to Fairview Avenue, in the Borough of Naugatuck, Connecticut (Ex. 1, Michaels Aff., ¶ 2).

2.     At that time and place, Michaels encountered a stray dog, later identified as Police K-9 Dog "Argo," which dog was running free through the woods along Fairview Avenue unattached to any tracking harness, and unaccompanied by any Police Officer (Michaels Aff., ¶ 3).

3.     At that time and place, the police dog attacked Michaels and inflicted several bite wounds to Michaels which required medical attention (Michaels Aff., ¶ 4).

4.     This attack by the police dog was utterly without provocation by Michaels, and was not the result of a direct command from any police officer, since, at the time of the attack, no police officer was present (Michaels Aff., ¶ 5).

5.     As a result of this attack, Michaels received several bite wounds, causing him pain and suffering, and leaving him with permanent scars (Michaels Aff., ¶ 6).

6.     At the time the police dog Argo attacked Shane Michaels, the dog was not under the control of its handler (Michaels Aff., ¶ 7).

7.     At the time the police dog Argo attacked Shane Michaels, it was not within sight of its handler (Michaels Aff., ¶ 8).

8.     At the time the police dog Argo attacked Shane Michaels, it had not been ordered to do so by its handler (Michaels Aff., ¶ 9).

9.     On the day the police dog Argo attacked Shane Michaels, its handler's supervisor, Lieutenant Scully, purported to investigate the incident (Ex. 2).

4

10.    According to Lieutenant Scully's report, Lieutenant Scully himself viewed dog bite wounds on Shane Michaels (Ex. 2).

11.    Officer Deeley has declared that the police dog did not bite Shane Michaels (Ex. 3, Deeley transcript, pg. 79, ln. 21; pg. 80, ln. 5; pg.81, ln. 7-16).

12.    Upon information and belief, Lieutenant Scully has never sought an explanation from Officer Deeley concerning the fact, known to Lieutenant Scully, that Shane Michaels was removed from the scene with dog bite wounds (Ex. 3, pg.83, ln. 17-23).

13.    At the time of the arrest, Scully photographed Shane Michaels wearing a black shirt (Ex. 2).

14.    Officer Deeley identified the individual who allegedly ran from him and refused to cooperate as wearing a white shirt (Ex. 3, pg. 72, ln. 1 -- pg. 76, ln. 24).

15.    Lieutenant Scully did not uncover this discrepancy in the course of his investigation (Ex. 2).

16.    Linda Michaels, the mother of Shane Michaels, filed a formal complaint with the Borough of Naugatuck Police Department concerning this attack, and the false arrest of her son (Ex. 4, Linda Michaels Aff., ¶ 2).

17.    After delivery of this complaint, Linda Michaels was not contacted by any member of the police department of the Borough of Naugatuck to discuss, investigate or communicate in any way about her complaint (Ex. 4, Linda Michaels Aff., ¶ 3).

18.    The Collective Bargaining Agreement in place between the police officers and the Borough of Naugatuck Police Department contains language that requires the Police Department to investigate a complaint by a citizen against an officer within sixty (60) days of receipt of the complaint (Def. Ex. 2C, §23.11b).

19.    In addition, that policy insulates police officers from interdepartmental discipline from all complaints except those brought strictly in compliance with the Collective Bargaining Agreement requirements (Def. Ex. 2C, §23.11).

20.    The plaintiffs propounded the following interrogatories and received the following answers:

"5.    State the number of internal investigations that have begun concerning the activities of Patrolman Bart Deeley and K-9 Argo from January 1, 1998 to the present."

**ANSWER:**

"NONE"

"6.    Was an internal investigation conducted for the incident that forms the gravamen of this Complaint?"

**ANSWER:**

"YES AN INVESTIGATION WAS CONDUCTED BY THE SHIFT SUPERVISOR"

"8.    If an internal investigation was begun, to whom was the investigation assigned?"

**ANSWER:**

"LT. JERRY SCULLY"

"9.    If an internal investigation was conducted, what was the conclusion of the investigating officer, and what were the facts upon which the investigating officer relied in reaching his conclusion?"

**ANSWER:**

"INVESTIGATOR    INTERVIEWED    BOTH    POLICE    OFFICERS INVOLVED."

"10.    State the number of times Patrolman Bart Deeley has been subjected to internal departmental discipline from the date of his hire to the present."

**ANSWER:**

"NONE"                                                                (Ex. 5)

21.    In support of defendant's Motion for Summary Judgment, Police Chief Clisham has provided an affidavit which includes the following paragraphs:

"5.    Sometime after plaintiff Shane Michaels was arrested, I became aware that his mother, Linda Michaels, made a complaint about her son's arrest, pursuant to our citizen's complaint procedures."

7

"6.    I conducted an inquiry, which included speaking with the two officers who were involved in the arrest, Bart Deeley and Steven Hunt. I also spoke with Lt. Jerry Scully, who was the supervising officer on the day that Shane Michael's was arrested, September 18, 2000."

"7.    I concluded, after speaking with the involved personnel, that Ms. Michael's complaint was without merit."                              (Def. Ex. 2)

22.    An individual named Kevin Bowler was attacked by police dog Argo on October 12, 1998 (Ex. 6, Bowler Aff., ¶ 2).

23.    Argo attacked Mr. Bowler without being ordered to do so by its handler (Bowler Aff., ¶ 3).

24.    Argo attacked Mr. Bowler even though Mr. Bowler was not engaged in a physical confrontation with its handler (Bowler Aff., ¶ 4).

25.    Argo attacked Kevin Bowler despite repeated commands from its handler to stop (Bowler Aff., ¶ 5).

26.    The incident involving Mr. Bowler does not appear in the Naugatuck Police Department records for incidents involving the use of force by a police dog that were provided in response to interrogatories (Ex. 7, 8).

27.    Sergeant Rick Smolicz arrived on the scene after the attack by the police dog, and saw the physical evidence that the police dog had bitten Mr. Bowler (Bowler Aff., ¶ 7).

8

28.    Mr. Bowler had two conversations with Police Chief Clisham to complain about this attack (Bowler Aff., ¶ 8).

29.    Mr. Bowler concluded his conversation with the Police Chief, having been led to believe that something was going to be done about this attack (Bowler Aff., ¶ 9).

30.    No investigation was conducted by the Naugatuck Police Department into this incident (Ex. 5, interrogatory 5).

31.    No discipline was imposed upon Officer Deeley as a result of this incident (Ex. 5, interr. 10).

32.    Officer Deeley denies that this incident occurred (Ex. 3, transcript pg. 39, ln. 6--pg. 40, ln. 18).

33.    John Laverty was attacked by police dog Argo on September 29, 1999 (Ex. 9, Laverty Aff., ¶ 2).

34.    At the time he was attacked by police dog Argo, he was not engaged in a physical confrontation with its handler (Laverty Aff., ¶ 3).

35.    At the time that police dog Argo attacked John Laverty, he had not been ordered to do so by his handler (Laverty Aff., ¶ 4).

36.    John Laverty filed a lawsuit as a result of this incident (Laverty Aff., ¶ 5).

37.    No internal investigation was done concerning the Laverty complaint (Ex. 5, interr. 5).

9